David Drake (UT# 0911)
DAVID DRAKE, P.C.
6905 South 1300 East, #248
Midvale, UT  84047
(801) 601-9049
Sirdrake2033@gmail.com

Kathryn N. Nester (UT #13967)
NESTER LEWIS PLLC
40 S 600 E
Salt Lake City, UT  84102
(801) 535-4375
kathy@nesterlewis.com

*Attorneys for Michael Kirk Moore*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PLASTIC SURGERY INSTITUTE OF UTAH, INC.; MICHAEL KIRK MOORE; and KRISTIN JACKSON ANDERSEN, <br><br> Defendant. | **JOINT REPLY ON** <br><br> ***DEFENSE'S MOTION TO CONTINUE TRIAL*** <br><br> Case No. 2:23-CR-00010-HCN <br><br> Honorable Howard C. Nielson Jr. |

COMES NOW Dr. Michael Kirk Moore ("**Moore**"), by and through undersigned counsel, and respectfully submits this reply on his previously-filed

*Defense's Motion to Continue Trial*, filed May 22, 2025 (the "**Motion**"). This reply is more particularly addressed to the *United States' Opposition to Defendant Dr. Moore's Motion to Continue Trial for Fifth Time Just Six Weeks Before Trial,* filed May 24, 2025 (the "**Opposition**"). Co-defendants Plastic Surgery Institute of Utah, Inc. and Kristin Jackson Andersen both join in this reply. It is further based more particularly on the following memorandum of points and authorities:

## STAEMENT OF PERTINENT FACTS

Moore herein adopts the factual recitations set forth in his Motion, together with the following:

1. The Motion argued that the newly provided discovery goes directly to the elements of the crimes for which Moore has been charged herein, namely, the element pertaining to the destruction of federal property, requiring the Government to prove beyond a reasonable doubt that the vaccines at issue herein were government property at the time of their disposal.

2. The Motion further took issue with the fact that, since 2023, counsel has discussed with prosecutors herein tracing the chain of ownership of the vaccines since the manufacturers through the contracts between such manufacturers and the federal government, as well as any third-party distributors.

3. The Motion argues that such contracts were first disclosed on May 21, 2025, with over 200 highly redacted pages of contracts provided—contracts Moore was incapable of obtaining himself through other means due to their confidentiality, which the Government itself has conceded through its pending request to seal

such matters even during trial. *See,* Opposition at p. 5 ("as noted in the United States' motion to seal the documents, the documents at issue contain sensitive information that should not be disclosed").

4. The Opposition, however, claims that these contracts are presented only for the purpose of supporting the pricing and value of the COVID-19 vaccines that Moore "is charged with wasting and destroying…" *Ibid.* at p. 2.

5. The Opposition distracts this Court into believing the Motion is based on attempts to retain expert witnesses and "further discovery to understand the pricing determination because it somehow relates to an open question about the ownership of the vaccines that defense counsel has had, by its own admission, since 2023 to explore." *Id.*

6. The Opposition repeatedly focuses on the time since Moore was indicted and how many attorneys he has hired throughout this process, all of which is irrelevant to the request for continuance that is based on the Government providing necessary information towards the elements of the crimes herein on the eve of trial years after the case began. *Ibid.*

7. The Opposition argues that Moore could have obtained this information himself in discovery but fails to actually indicate **how** Moore was capable of doing so since such would be barred by FOIA requests and/or subpoenas as argued in the Motion. *Ibid.*

8. The Opposition focuses on all elements except the one at issue herein—whether the vaccines at issue were "government property" at the time of their disposal to meet the element of destruction of government property. *Ibid.*

9. Moore's need to prepare has nothing to do with the pricing element of the charges, but rather the inference of "governmental property" that can be drawn by the fact-finder at trial based on this information. *Id.*

10. The Opposition attempts to erroneously shift the burden of proving the element of destruction of governmental property to Moore by stating that Moore's "necessity defense" somehow keeps him from arguing the Government could not meet its burden on the elements of the crime; however, it is the Government's responsibility to provide the necessary information to Moore on such elements under FED. R. CRIM. P. 16(a)(1)(E)(i) and (ii)(requiring Government to provide documents material to preparing the defense, particularly if they intend to use it at trial).

11. The Opposition fails to mention that its recent *USA's Witness List* has, for the first time, disclosed Gary L. Disbrow, Ph.D., Administration for Strategic Preparedness and Response (ASPR), Deputy Assistant Secretary for Preparedness and Response and has during the pendency of this very Motion provided a new interview report for Dr. Disbrow who is presumed to be the signatory on the contracts that have been late-provided by the Government.

12. This is not the only late-witness interview provided by the Government at this time, having provided one other as well while this very Motion is pending.

13. The Government claims to have substituted Dr. Disbrow after determining that its prior CDC witness (Chris Duggar) could not competently testify to the exact pricing of the COVID-19 vaccines. Duggar was not a signatory on the contracts produced, but it is presumed Dr. Disbrow is.

14. Clearly the Government has provided no time for Moore to adequately prepare his own expert and defense against such information, necessitating a continuance of the trial due to the Government's actions of providing such Rule 16 required information so late in these proceedings.[1]

15. The Opposition concedes this late-provided information is material to preparing Moore's defense, having conceded that they believe the contracts and interviews have been provided for the purpose of establishing pricing of the vaccines—another element of the crimes charged herein.

16. As the Opposition itself states "The value of the vaccines that Dr. Moore is charged with converting and destroying is relevant to prove that the government property at issue exceeds $1,000." *Id., citing* 18 U.S.C. § 641. By its own admission, that value therein is predicated on proof of it being "government property" at the time it is destroyed because Dr. Moore would not be charged under 18 U.S.C. §641 with this crime if he was destroying non-government property.

---

[1] The Opposition argues Dr. Moore has had sufficient time, citing 18 U.S.C. §3161(h)(7)(B)(iv); however, that section pertains to the calculation of time for filing of an indictment or for bringing the matter to trial (i.e. speedy trial rights). It does not apply to a determination for a continuance, but rather considers already granted continuances in the calculation of these time periods.

17. The Opposition further concedes that Dr. Disbrow's testimony is anticipated to be based on "the prices that the United States paid for the vaccines at issue" which directly allows the fact-finder to infer facts on the element of whether the vaccines are "government property" if he testifies to transactions by the government to purchase such under the newly provided contracts. *Ibid.* at pp. 4-5.

18. The Opposition further concedes that only a few of the 200+ redacted pages of the contracts are relevant to show prices, yet more has been provided and is intended to be presented, which requires additional time for Moore to prepare to meet the factual inferences that can be drawn from the remainder of those pages.

19. The Opposition argues that the Government's pending motion to seal shows that the contracts contain sensitive information that should not be disclosed so "the only information needed from the documents is the pricing information." This may be true for the United States' case, but not for Moore's, and Rule 16 required them to disclose the information necessary for Moore to prepare his defense, particularly to the element of whether the vaccines are in fact "government property."

20. The Opposition proposes that Dr. Disbrow be allowed to testify only that the vaccines cost $1 each, which would allow the 2260 vaccines to meet the necessary level of value for the crime charges under 18 U.S.C. §641—which is all the contracts and Dr. Disbrow have been called by the Government to provide. However, this continues to ignore that these contracts are necessary to and will invite the fact-finder to infer that the vaccines are "government property" which

Moore is entitled to prepare a defense towards but has not been provided sufficient time to do so by the Government providing these on the eve of trial.

21. It is important to note that the Opposition makes no claim that the contracts and interviews have not been in their possession until now to absolve their duties under Rule 16 of having provided them earlier than on the eve of trial.

22. Dr. Moore has likewise prepared for trial on the basis that the Government did not have this information to present or did not intend to present evidence towards the chain of ownership of the vaccines, leading Dr. Moore into the defense he has worked so hard to prepare. This clearly impacts that defense if it is allowed to be admitted because the inferences from it of "government property" are more than apparent.

23. The Opposition wrongfully speculates that Moore has not been diligent in preparing for trial, again claiming that his focus on the "necessity defense" somehow has foreclosed his ability to challenge late-provided evidence towards the element of "government property." Clearly it has not, or this matter would be concluded even before trial began. The defense that the Government has not met their burden on the elements always exists until conviction or acquittal, and late provided information towards supporting the elements undoubtedly raises issues under Rule 16 since it was necessary to Moore's preparation of his defense.

24. The Opposition takes issue with the number of times the trial has been scheduled herein; however, their recitation of such is misrepresented. The Government did not oppose the continuance requested for the October 2024 trial

setting, which was a tacit stipulation thereto, notwithstanding they claim in the Opposition now that they were prepared to move forward.

25. The Government's claim is disingenuous that it is Dr. Moore seeking another trial continuance "at the last minute" when it is the Government who provided material evidence towards the elements of the crime "last minute." *Ibid*. at p. 6. If there is a delay herein it is faulted to the Government for delaying disclosure. *Id*.

## ARGUMENT

FED. R. CRIM. P. 16(a)(1)(E)(i) and (ii) state that "[u]pon a defendant's request, the government must permit the defendant to inspect and copy or photograph … documents … or copies or portions of any of these items, if the item is within the government's possession, custody, or control and … the item is material to preparing the defense; … the government intends to use the item in its case-in-chief at trial…" Further, *Brady* requires disclosure of evidence favorable to the accused, but also material either to guilt or punishment. *United States v. DeLeon*, 428 F. Supp. 3d 716, 767–68 (D.N.M. 2019), *citing Brady,* 373 U.S. at 87, 83 S.Ct. 1194. "Under rule 16, evidence is 'material' if 'there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, ... or assisting impeachment or rebuttal.'" *Id*.

As with any other defendant facing federal criminal charges, Dr. Moore relied on the disclosures and discovery provided by the Government herein, believing it would act with integrity and transparency, but its late-disclosures and attempted shifting of burden to Dr. Moore in the Opposition has stated otherwise. Claiming

Dr. Moore is "snipe hunting" is unquestionably a strategy to distract this Court from the Government's failures under its responsibilities and duties. This Court should decline to be distracted from the issue at hand.

The Opposition herein first attempts to detract this Court from recognizing the Government failed in its responsibilities and duties under Rule 16, the omission of which has now caused the need for a continuance because of its negative impact on Moore' ability to prepare his defense. Although those omissions and failures have necessitated the requested continuance herein, the Opposition does not even engage at all with that rule in the wake of the Motion claiming late disclosures.

Contrary to the Opposition's assertion, the disclosure of this information is not strictly circumscribed to what the Government intends to use it for in their case-in-chief, but rather (as the Government likely is aware) inferences can be drawn by the fact-finder regarding that information. And this inference is not far-reaching. The Government's intention to present it for the purpose of showing how much the United States paid for the vaccines goes directly towards ownership of the vaccines in such transaction.

It is the Government's burden (not Dr. Moore's) to prove beyond a reasonable doubt that the vaccines were in fact "government property" even as threshold to their value to obtain a conviction against Dr. Moore. It was not Dr. Moore's responsibility to seek this information in his own preparation for trial. However, he has been prejudiced by the fact that he did prepare his defense on the basis

that the Government lacked such information since it was never disclosed until now. The element of pricing means nothing if it was non-governmental property but has a direct impact on that other element. As the Opposition claims, the Government intends to ask Dr. Disbrow how much the United States paid for the vaccines under the contracts—contracts that are transactional in nature with an inference that ownership passes. Yet the Government claims it will not be asking Dr. Disbrow these questions—only pricing and valuation. The problem is in the foundation that must be laid to ask the question itself.

Before this late disclosure, the Government had provided no other evidence to Dr. Moore—particularly transactional evidence involving the United States with Maderna, Pfizer, or Janssen—towards meeting such "government property" element. Evidence towards establishing elements is the bare minimum of what should be disclosed under the Government's Rule 16 duties. Dr. Moore's only remedies from such late disclosure is the continuance requested herein, or total

exclusion of such evidence from the trial itself.² If the Government wants to concede to its exclusion, however, that would only be in their own case. Dr. Moore finds material assistance to his defense in what has been provided, but requires additional time to prepare for it, which is the entire purpose of Rule 16. Continuance is thus the preferred remedy. *See, United States v. Yepa*, 608 F. App'x 672, 677–78 (10th Cir. 2015).

Had the Government timely provided the disclosures of the contracts, witness interviews and witnesses then the continuance would not have been necessary. But they did not.

The prejudice to Dr. Moore if a continuance is denied and the evidence found admissible is apparent from his previously-filed motion to dismiss. Dr. Moore argued that the vaccines were administered by the State of Utah rather than the federal government, and he was without sufficient information to support such

---

² "There are three principal factors that a district court should consider in determining the appropriate sanction for violating a scheduling order: (1) the reason for the delay, including whether the non-compliant party acted in bad faith; (2) the extent of prejudice to the other party; and (3) 'the feasibility of curing the prejudice with a continuance.'" *United States v. Yepa*, 608 F. App'x 672, 677–78 (10th Cir. 2015), *citing United States v. Wicker,* 848 F.2d 1059, 1061 (10th Cir.1988). But these "three factors merely guide the district court and do not dictate the bounds of the court's discretion." *Id., citing United States v. Russell,* 109 F.3d 1503, 1511 (10th Cir.1997). And while "[t]he court should impose the least severe sanction that will accomplish prompt and full compliance with the discovery order," *United States v. Gonzales,* 164 F.3d 1285, 1292 (10th Cir.1999), in some circumstances a district court may "suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the [party entitled to the disclosure] may not be prejudiced" *Id., citing Wicker,* 848 F.2d at 1061. "This is because our admonition that a continuance is preferred 'does not mean that a continuance is necessary just because it will cure the prejudice.' *Id., citing United States v. Russell,* 109 F.3d 1503, 1512 (10th Cir. 1997). "[E]xclusion is ordinarily only appropriate where a party acts in bad faith or lacks any legitimate reason for a delay." *Id.* (footnote omitted)*; see Banks,* 761 F.3d at 1199; *United States v. Golyansky,* 291 F.3d 1245, 1250 (10th Cir.2002); *United States v. Adams,* 271 F.3d 1236, 1244 (10th Cir.2001); *Gonzales,* 164 F.3d at 1292; *United States v. Red Elk,* 185 Fed.Appx. 716, 721–23 (10th Cir.2006) (unpublished). "But our case law also establishes that negligence alone can justify excluding evidence." *Id.*

matter before this Court. Dr. Moore was unable to show where the vaccines came from, who administered the dissemination of them, and from whom his office received them. The contracts herein aid in those unanswered questions, but the Government was aware for two (2) years that Dr. Moore was incapable of subpoenaing the information or utilizing an FOIA request to obtain them. This is conceded in the Government's own Opposition referring to their pending motion to seal such documents due to their sensitive and confidential nature in governmental affairs. Dr. Moore could not fully explore nor prepare his "necessity defense" nor his alternate defense that the vaccines were not "government property" because he had no ability to access the records the Government conveniently decided to disclose on the eve of trial.

The Opposition wrongfully speculates that Moore has not been diligent in preparing for trial, again claiming that his focus on the "necessity defense" somehow has foreclosed his ability to challenge late-provided evidence towards the element of "government property." However, this information conveniently kept from disclosure until now would have impacted even that defense. Dr. Moore was unable to litigate his "necessity defense" because he was incapable of obtaining the information that has now been provided. He just requires time to prepare to meet the negative inferences that may be drawn and obtain his own expert to rebut that of Dr. Disbrow and any negative inferences that would be drawn by the fact-finder.

## **CONCLUSION**

WHEREFORE, based on the foregoing, Dr. Moore respectfully requests this Court grant a 180-day continuance of the trial currently set to commence on July 1, 2025, and enter such further orders that it deems necessary.

DATED THIS 3rd day of June, 2025.

      /s/*David Drake*
David Drake
Kathryn Nester
Attorneys for Dr. Moore